IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
AT ORLANDO

| | |
|---|---|
| DAVID J. KRIENS, SR. AND BRENDA L. KRIENS,<br><br>Plaintiffs,<br><br>vs.<br><br><br>WYNDHAM DESTINATIONS, INC., WYNDHAM VACATION OWNERSHIP, INC., and WYNDHAM VACATION RESORTS, INC.,<br><br>Defendants. | CASE NO: _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Come Plaintiffs, and for their Complaint against Defendants, WYNDHAM DESTINATIONS, INC., WYNDHAM VACATION OWNERSHIP, INC. and WYNDHAM VACATION RESORTS, INC., and allege the following:

## I.    INTRODUCTION

1.     The acts and omissions relevant to this complaint and described herein occurred initially in the sales presentation conducted by Defendants, Vacation Resorts, Inc. (hereinafter "WVR"), Wyndham Vacation Ownership (hereinafter "WVO") and Wyndham Designations, Inc. (hereinafter "WYND"), through their agents, July 20, 2015, in Virginia involving Plaintiffs. In each instance, the sales presentation was conducted by a sales representative who was the agent of Defendants WVR, WVO and WYND. As a result of the Defendants' conduct, Plaintiffs have paid more than $80,000.00 to Defendants. The acts and omissions are continuing in nature and continue until current.

2.      Defendants, Vacation Resorts, Inc., Wyndham Vacation Ownership and Wyndham Designations, Inc. collectively are engaged in the multi-billion-dollar timeshare industry.

3.      Defendants, WVR, WVO and WYND own, operate or are affiliated with vacation ownership resorts in the following states and U.S. territories: (1) Arizona; (2) Arkansas; (3) California; (4) Colorado; (5) Florida; (6) Georgia; (7) Hawaii; (8) Idaho; (9) Illinois; (10) Louisiana; (11) Maryland; (12) Massachusetts; (13) Missouri; (14) Montana; (15) Nevada; (16) New Hampshire; (17) New Jersey; (18) New Mexico; (19) New York; (20) North Carolina; (21) Oklahoma; (22) Oregon; (23) Pennsylvania; (24) Puerto Rico; (25) Rhode Island; (26) South Carolina; (27) Tennessee; (28) Texas; (29) Utah; (30) Vermont; (31) Virginia; (32) Washington; (33) Wisconsin; and (34) U.S. Virgin Islands. *See* https://www.clubwyndham.com/cw/resorts.page.

4.      Plaintiffs, each of them, are the victims of Defendants, WVR, WVO and WYND's highly organized and fraudulent scheme to sell timeshare interests to prospective owners, including each of the Plaintiffs, to have existing owners remain in contracts involving the purchase of timeshare interests (including through the rescission period), and to have existing owners purchase additional timeshare interests. Each of the Plaintiffs purchased Vacation Ownership Interest ("VOI") from WVR, WVO, and WYND or an affiliated company. Each plaintiff has suffered damage based on the fraudulent omissions and violations of laws as set forth in this complaint. The expected damages from the fraud, plus punitive damages, emotional harm, and other damages, exceeds $75,000 for each Plaintiff.

5.      Defendants WVR, WVO and WYND's, highly organized and fraudulent scheme violates applicable statutory law, common law and the duty of good faith and fair dealing implicit in all contracts.

6.     Each and every Plaintiff paid out thousands of dollars to purchase timeshare interests as a result of Defendants', each of them, unlawful and wrongful conduct, and as a result, have suffered injuries, harm, and damages.

## II.    JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.A. 1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the citizenship of the parties is diverse.

8.     The Court has General jurisdiction and venue over the Defendants WVR, WVO and WYND as each of them is headquartered in Orlando, Florida.

9.     This Court has both general and specific personal jurisdiction over all Defendants because all Defendants have continuous and systematic general business contacts in this District. All Defendants own, maintain, operate, collect payments, and/or derive revenue from the sale of property in this District, and had contact with this District specifically with respect to the events giving rise to each of the Plaintiffs' claims. All Defendants have purposefully and voluntarily availed themselves of this Court's jurisdiction by engaging in and/or profiting from real and personal property transactions in this District. The reservation system that controls the timeshare and vacation ownership interests (VOI) inventory is located in the state of Florida. Each vacation plan at issue is located in and/or has accommodations located in the state of Florida, as well as exists and originates in the state of Florida.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, and the property that is the subject of this action is situated in this District.  WVR, WVO and WYND conduct substantial business in this District, has marketed, advertised, and sold timeshare properties in this District, and has caused harm due to their activities in this District.

### III.    PARTIES

**Plaintiffs**

11.    Plaintiffs are timeshare purchasers who did purchase timeshare interests from Defendants on the date and at the location indicated in Paragraph 1 above.  Plaintiffs are citizens and residents of Des Moines, Iowa.

**Defendants**

12.    Wyndham Vacation Ownership, Inc. and Wyndham Vacation Resorts, Inc., which have their principal places of business in Orlando, Florida.  Wyndham Worldwide Corporation, Inc. is the predecessor of WYND.

13.    Prior to June 1, 2018, WVR, WVO and Wyndham Worldwide Corporation, Inc. collectively was one of the world's largest hospitality companies, offering hospitality services through several brands, including but not limited to Wyndham Hotels and Resorts, Ramada, Days Inn, Super 8, Howard Johnson, Wingate by Wyndham, Microtel Inns & Suites by Wyndham, TRYP by Wyndham, Dolce Hotels and Resorts, RCI, Wyndham Vacation Rentals, Wyndham Vacation Resorts, Wyndham Vacation Ownership, Star Island by Wyndham, Shell Vacations Club and WorldMark by Wyndham.

14.    On June 1, 2018, Wyndham Worldwide Corporation split into two publicly traded companies: Wyndham Destinations, Inc., (WYND) which focuses on the vacation ownership at issue in this action, and Wyndham Hotels and Resorts, Inc., which focuses on hotels and resorts.

15.    Defendant Wyndham Destinations, Inc. is a Delaware Corporation with its principal address in Parsippany, New Jersey.  Wyndham Destinations, Inc. conducts a substantial amount of business in Florida and this District, including (after June 1, 2018) the operation of its wholly-owned subsidiaries Wyndham Vacation Ownership, Inc. and Wyndham Vacation Resorts,

Inc., which have their principal places of business in Orlando, Florida.  Wyndham Destinations, Inc. operates under several brands, including but not limited to Wyndham Vacation Resorts, Wyndham Vacation Rentals, Wyndham Vacation Ownership, Shell Vacations Club and WorldMark by Wyndham.  Wyndham Destination, Inc.'s registered agent for service in Florida is Corporate Creations Network Inc., 11380 Prosperity Farms Road, #221E, Palm Beach Gardens, Florida, 33410.

16.     Defendant Wyndham Vacation Ownership, Inc. ("WVO") is a Delaware corporation, with its principal place of business in Orlando, Florida.  WVO's registered agent for service in Florida is Corporate Creations Network Inc., 11380 Prosperity Farms Road, #221E, Palm Beach Gardens, Florida, 33410.

17.     Defendant Wyndham Vacation Resorts, Inc. ("WVR") is a Delaware corporation, with its principal place of business in Orlando, Florida.  WVR's registered agent for service in Florida is Corporate Creations Network Inc., 11380 Prosperity Farms Road, #221E, Palm Beach Gardens, Florida, 33410.

18.     Although separate corporations, all Defendants, WVR, WVO, and WYND, engage in uniform and common operations related to the ownership and operation of vacation ownership resorts and the marketing and sale of vacation ownership interests.

19.     All Defendants, WVR, WVO and WYND, share the same offices in Parsippany, New Jersey and Orlando, Florida.

20.     All Defendants, WVR, WVO and WYND, share many of the same officers and directors.

21.     At all times herein referenced, each of the Defendants, WVR, WVO and WYND, was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of

the other Defendants, WVR, WVO and WYND, and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, WVR, WVO and WYND, knowing that their collective conduct constituted a fraudulent scheme and a breach of duty owed to each and every Plaintiff.

22.    At all times herein referenced, Defendants, WVR, WVO and WYND, and each of them, were fully informed of the actions of their agents and employees based on Defendants, WVR, WVO and WYND's fraudulent scheme, and thereafter Defendants, WVR, WVO and WYND, and each of them rewarded those actions and no officer, director or managing agent of any Defendants repudiated those actions on behalf of any Defendants.

23.    There exists and, at all times mentioned herein, there existed a unity of interest in ownership between all Defendants, WVR, WVO and WYND,  such that any individuality and separateness between the Defendants have ceased and these Defendants, WVR, WVO and WYND, and each of them are the alter ego of the other Defendants and exerted control over those Defendants. As such WVR, the subsidiary of WVO, is the mere instrumentality of WVO so as to allow WVO, through its organization and use of WVR, to be engaged in the improper conduct described herein. Additionally, WVO, the subsidiary of WYND, is the mere instrumentality of WYND so as to allow WYND, through its organization and use of WVO, to be engaged in the improper conduct described herein. Adherence to the fiction of the separate existence of these Defendants as entities distinct from the other Defendants will permit abuse of the corporate privilege and would sanction a fraud and/or would promote injustice.

## IV.    DEFENDANTS' HISTORY

24.    As of 2017, Wyndham Vacation Ownership, a brand of Wyndham Worldwide Corporation at the time, was the world's largest timeshare business based on the number of resorts,

units, owners and revenues, with 221 resorts and over 878,000 owners.  According to Wyndham Worldwide Corporation's 2017 10-K, Wyndham develops and markets timeshare interests, commonly referred to as Vacation Ownership Interests ("VOIs") to individual consumers, provides consumer financing in connection with the sale of VOIs and provides property management services at resorts from which maintenance fees are charged to owners.  Thus, Defendants derive revenues from at least three (3) sources: 1) the sale of VOIs; 2) finance charges from "mortgage" financing; and 3) maintenance fees charged to VOI owners.

## V.    DEFENDANTS' BUSINESS OPERATIONS

### A.    The "Points" Concept

25.    The timeshare industry is driven by the sale of VOIs, which are represented by "points."  Put simply, a purchaser enters into a contract to pay a certain amount of money to purchase a certain number of points which can be used each year to stay at several of the resorts either owned or operated by the timeshare company or a resort of one of its affiliates.

26.    Thus, in order to stay at a resort owned or operated by a timeshare company, or a resort affiliated with a timeshare company, an owner must use his or her points to stay at a resort unit.  The amount of points necessary to stay at a particular resort unit is based on several factors, including the location of the property and the date(s) one wants to stay.  Using this system and the accompanying reservation system (located in the state of Florida) for timeshare resort accommodations, each Plaintiff was or is entitled to make reservations and stay in accommodations located in the state of Florida.

27.    WVO, WVR, and WNYD operate in a similar manner as discussed in two preceding paragraphs of this Complaint as it relates to the points concept.

### B.    Luring Prospective Owners

28.     As part of the "presentations" or "tours," WVR, WVO and WYND, through their agents, omitted material facts to each and every Plaintiff as to how their points system works by not telling each and every Plaintiff that Plaintiff will be in competition with other owners to whom WVR, WVO, and WYND have sold VOIs with millions of corresponding points and with WVR, WVO, and WYND who does restrict the availability of reservations by using the accommodations for marketing and rental to generate income.

29.     All persons, including each and every Plaintiff, who own VOIs assign their possessory, use, and occupancy rights to a trust and receive a symbolic point allocation based upon their ownership interest.

30.     These membership points are renewed annually or biennially for alternate year ownership and are used to reserve accommodations through a reservation system owned and maintained by Wyndham.

**C.     Methods Used on Prospective and Existing Owners**

31.     All Defendants, WVR, WVO, and WYND, through their agents, entered into a Tolling Agreement with each and every Plaintiff named therein, with the purpose of attempting to negotiate a settlement with the Plaintiffs named therein instead of engaging in litigation. Plaintiffs were on a Tolling Agreement, which tolled any and all statute of limitations related to any and all claims that, among others, the Plaintiffs may have against WVR, WVO, and WYND.

32.     Per the Tolling Agreements, which are in each Defendants' possession, the parties could terminate at any point by giving written notice.  Upon written notice of termination, the tolling period extends an additional sixty (60) days.

33.     Any applicable statutes of limitations did not begin running again after the written notice to terminate the tolling agreement because the tolling agreement specifically provides that

the Plaintiffs named therein could file a lawsuit "thirty (30) days after the termination date" and "[t]he tolling period shall extend sixty (60) days beyond termination."

34.    All Defendants terminated the Tolling Agreement on October 23, 2018.   On December 22, 2018, a putative class action was filed in the case of *Couch v. Wyndham Worldwide Corporation, et al.*, in which each and every Plaintiff was a putative class member and subject to equitable tolling under the *American Pipe* doctrine and its progeny.  A First Amended Complaint was filed in the *Couch* action on January 16, 2019.  The *Couch* action was filed within sixty (60) days beyond the termination of the Tolling Agreement, and the Plaintiffs, in this case, have filed this action prior to the dismissal of the federal action.


## VI.    DISCOVERY RULE, FRAUDULENT CONCEALMENT AND ESTOPPEL

### A.    Discovery Rule

35.    Each and every Plaintiff's individual causes of action did not accrue until each individual Plaintiff discovered, or could have discovered with reasonable diligence, the facts misrepresented, omitted, and concealed by WVR, WVO, and WYND. Plaintiff could not have discovered the omissions of WNYD, WVO, and WVR until much later after the purchase, after repeated, unsuccessful attempts to obtain reservations, which could be years depending on vacation schedules.

### B.    Fraudulent Concealment

36.    Any applicable statutes of limitation have been tolled by WVR, WVO and WYND's knowing, active, and ongoing concealment and denial of the material facts as alleged herein.  WVR, WVO, and WYND are sophisticated parties with superior knowledge of complex

real estate and business transactions as to each and every Plaintiff. WVR, WVO, and WYND, were and are under a continuous duty to disclose to each and every Plaintiff the material facts alleged herein, and each and every Plaintiff reasonably relied on WVR, WVO and WYND's knowing, affirmative, and ongoing concealment.

37.    Each and every Plaintiff has been kept ignorant by WVR, WVO, and WYND of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.

**C.    Estoppel**

38.    WVR, WVO, and WYND were and are under a continuous duty to disclose to each and every Plaintiff the true character, quality, and nature of the timeshare interests and transactions as alleged herein. Those concealments are ongoing. Each and every Plaintiff reasonably relied on WVR, WVO and WYND's failure to disclose and/or active concealment of those facts. WVR, WVO, and WYND are estopped from relying on any statutes of limitation in defense of this action. Additionally, WVR, WVO, and WYND are estopped from raising any defense of laches due to their own conduct as alleged herein.

**COUNT ONE – FRAUD BY OMISSION**

**(WYND, WVO, WVR)**

39.    Each and every Plaintiff does hereby incorporate paragraphs 4, 6, 21-23, 28, 35-38 into this count.

40.    Each Defendant, WYND, WVO, and WVR, by and through their sales agents, had a duty to disclose material facts during the sales presentations to each Plaintiff.

41.    Each Defendants', WVR, WVO and WYND, failure to speak rendered the defendants', WVR, WVO and WYND, agents' own speech misleading and deceptive to each Plaintiff.

42.    Each Defendant, WVR, WVO and WYND, through their agents, had a duty to disclose the material facts because of the relationship between each plaintiff and each defendant, due to Defendants', WVR, WVO and WYND, agents being licensed Real Estate Agents with the duty to disclose material facts in selling real estate to each Plaintiff.

43.    Each Defendant, WVR, WVO and WYND, through their agents, had a duty to disclose because the parties' relative access to the information to be disclosed put the Defendants, each of them, though their agents, in exclusive knowledge of the true facts, as opposed to all Plaintiffs, who did not know the facts at the time of the sale.

44.    Each Defendant, WVR, WVO and WYND, through their agents, had a duty to disclose due to the benefit derived by the Defendants, each of them, from the purchase or sale, as well as, each defendants' awareness of all plaintiffs' reliance on each defendant, WVR, WVO and WYND, through their agents, in making purchase decisions, and each defendants' role in initiating the purchase or sale to each Plaintiff.

45.    Defendants have developed and implemented a series of sales pitches in accordance with their sales scheme, which are fraught with material omissions and concealment.

46.    WVR, WVO, and WYND have developed, implemented, overseen, and enforced a common method by which to train their sales representatives on WVR, WVO and WYND's fraudulent sales schemes, all of which originates in the state of Florida.

47. WVR, WVO and WYND's sales representatives go through constant fraudulent sales scheme training by management, said training originating in the state of Florida at the headquarters of WVR, WVO and WYND.

48. To effectuate WVR, WVO and WYND's fraudulent scheme detailed herein, WVR, WVO, and WYND failed to disclose, omitted, and concealed material and legally required information from each and very Plaintiff.

49. WVR, WVO, and WYND, through their agents, failed to disclose and concealed from each and every Plaintiff that timeshare owners are routinely unable to book units at one of the resorts owned or operated by WVR, WVO and WYND or resorts associated or affiliated with WVR, WVO and WYND, even with as much as 12 months' notice.

50. Each and very Plaintiff have made repeated attempts to book a stay, only to find that there is no availability at the resort of their choosing.

51. WVR, WVO, and WYND, through their agents, failed to disclose to each and every Plaintiff that tens of thousands of people own VOIs having priority over them making it impossible or virtually impossible to stay at the resort of their choosing at the time they want to go.

52. WVR, WVO and WYND, through their agents, failed to disclose to each and every Plaintiff that they set aside a substantial number of units at their resorts as vacation rentals, further restricting the supply of units available for timeshare owners to use. In other words, WVR, WVO, and WYND choose to rent units out—including the specific units they list in deeds of sale to timeshare owners—instead of making them available to owners.

53. WVR, WVO, and WYND are incentivized to rent units at their resorts to non-owners, providing further opportunities to market to non-owners while they are staying on the

property using Defendants' uniform and standardized fraudulent sales scheme described above, thereby increasing the number of new owner purchases each year.

54.    In addition, WVR, WVO, and WYND, through their agents did not inform each and every Plaintiff that they set aside large numbers of demonstration units for tours and sales efforts they use to generate new timeshare business. Thus, none of these units are available to each and every Plaintiff who have legitimately paid for the right for access to them.

55.    The omissions of each Defendant, (WVR, WVO, and WYND) through their agents, that should have been disclosed to each Plaintiff but was not disclosed include the following:

a) Defendants WVR, WVO and WYND, through their agents, failed to disclose to any Plaintiffs that timeshare owners are routinely unable to book units in the Resort with as much as 12 months' notice, making it unreasonably difficult or virtually impossible to use their timeshare. All Plaintiffs have made repeated attempts to book a stay during their allotted time, only to be told by WVR, WVO and WNYD officials and agents that there is no availability at the Resort. As a result, all Plaintiffs have been unable to reasonability use their timeshare property.

b) Defendants WVR, WVO and WYND, through their agents, failed to disclose to any Plaintiff that Defendants WVR, WVO, and WYND set aside a substantial number of units in the Resorts as vacation rentals, further restricting the supply of units available for timeshare owners to use. In other words, Defendants WVR, WVO, and WYND choose to rent units out—including the specific units it lists in deeds of sale to timeshare owners, including the Plaintiffs —instead of making them available to any of these Plaintiffs. In some instances, as described more fully below, Defendants WVR, WVO, and WYND have told a timeshare owner that there is no availability in the unit type listed they were trying to book, but the owner then finds the same unit type listed on Wyndham's website as a vacation rental, with proceeds going to Wyndham.

c) Defendants WVR, WVO and WYND, through their agents, did not inform any of the Plaintiffs that they, Defendants WVR, WVO and WYND, set aside large numbers of demonstration units for the near-constant tours and sales efforts used to generate new timeshare business. Because the profitability of Wyndham's timeshare business largely depends on sales of new and upgraded units, the Resort devotes substantial resources to high-pressure sales tours, during which dozens to hundreds of prospective purchasers are brought each day through many of the nicest timeshare units at the Resort. None of these units are available to any of the Plaintiffs who have legitimately paid for the right access to them and pay the maintenance fees due to that fact that Defendants WVR, WVO and WYND use these rooms for promotional purposes.

d) Defendants WVR, WVO and WYND, through their agents, used the word "equity" while selling to each and all Plaintiffs, telling all Plaintiffs that they could roll their "equity" into a new sale. Defendants', each of them, through their agents failed to disclose to any Plaintiffs that their calculation of "equity" in their representation to each and all Plaintiffs was not based on any analysis of the actual market value of the Plaintiffs' timeshare interest or the amount owed on any loans and is simply a calculation of the amount that each individual Plaintiff had previously paid to Defendants, each of them, for the timeshare.

e) Defendants WVR, WVO, and WYND, through their agents, failed to disclose to any or all Plaintiffs that the points or deeds they sold to Plaintiffs have virtually no value on the secondary market. Defendants WVR, WVO, and WYND, through their agents, failed to disclose that in reality, there is no "equity" in a timeshare as there is no or little aftermarket whatsoever, and in fact, many people actually have to pay to get out of a timeshare, let alone being able to sell it for any value.

f) Defendants WVR, WVO, and WYND, through their agents, did not disclose to any Plaintiff that they rent units on the open market such as on vacation websites like Hotwire.com, Expedia.com, etc. and will be directly competing with each and all Plaintiffs for reservations, and rental space.

56.    In the context of real estate, equity is commonly defined and understood to mean the market value of the property interest reduced by any liens or loans against the property interest, or the amount that could be obtained after selling the property interest, or the amount that could be obtained after selling the property in the open market and paying off any loans or liens against it. By representing to each and every Plaintiff that they have equity, WVR, WVO, and WYND, through their agents, were making a representation to each and every Plaintiff that their timeshare interest had significant real value when that representation was false.

57.    Defendants WVR, WVO and WYND, through their agents, engaged in high-pressure sales tactics based on fraud and deception with material omissions, misrepresentations, and concealment designed to induce each and all Plaintiffs to enter a contract with inaccurate and incomplete information.

58.    Defendants WVR, WVO and WYND, through their agents, have engaged and continue to engage in the following actions or inactions listed above, without limitation, as part of

their fraudulent scheme to induce each and all Plaintiffs to enter into contracts based on inaccurate and incomplete information.

59.     As timeshare licensees, WVR, WVO and WYND's  agents were and are required to disclose to each party to the transaction any adverse facts of which they had actual notice or knowledge, and provide timely and accurate information regarding market conditions that might affect the transaction; and they were required to provide services to each party to the transaction with honesty and good faith, yet WVR, WVO, and WYND, through their agents, failed to provide any Plaintiff with the information outlined in paragraph 58 above.

60.     By utilizing an unlawful fraudulent scheme and/or misrepresenting, omitting, or concealing materials facts from each and all Plaintiffs, Defendants, WVR, WVO, and WYND, through their agents misrepresented, fraudulently omitted and concealed material information (and continue to do so) in violation of applicable common law and statutory laws.

61.     Defendants, WVR, WVO, and WYND, knew or should have known, that they were and are misrepresenting, omitting, and concealing material facts to each and all Plaintiffs.  The misrepresentations, omissions, and concealment described herein were material in nature and were made to induce each and all Plaintiffs to enter into a contract.

62.     All Plaintiffs reasonably and justifiably relied upon Defendants, WVR, WVO and WYND, misrepresentations, omissions, and concealment of material facts in deciding to purchase the timeshare interests.  Defendants, WVR, WVO, and WYND, knew of the falsity of the misrepresentations, omissions, and concealment of material fact, or had utter disregard for their truth.   Defendants, WVR, WVO and WYND, intended to induce reliance upon the misrepresentations, omissions, and concealment of material fact by each and all Plaintiffs.  All Plaintiffs were entitled to rely upon the facts as represented.

63.     All Plaintiffs' reliance was reasonable under the circumstances.

64.     All Plaintiffs were injured and damaged by virtue of their reliance on the facts as represented by Defendants, WVR, WVO, and WYND.  Had any Plaintiffs known the truth, they would not have entered into a contract with Defendants WVR, WVO and WYND.

65.     Defendants', WVR, WVO and WYND, misrepresentations, omissions, and concealment were intentionally made for the purpose of inducing each and all Plaintiffs to enter into a contract with Defendants, WVR, WVO, and WYND.  Defendants WVR, WVO and WYND's sales agents work on commission and received commissions from the sale to all Plaintiffs.

66.     The sales agents of WVR, WVO, and WYND were improperly motivated by greed and pecuniary gain, as a basis for them failing to disclose material facts to each and all Plaintiffs.

67.     At all times relevant, the sales agents and other individuals described herein were acting as agents of Defendants, WVR, WVO, and WYND and their actions, which were performed in the scope of their employment with Defendants, WVR, WVO, and WYND are attributable to Defendants WVR, WVO, and WYND pursuant to the doctrine of respondeat superior.

68.     For all of the reasons set forth herein, each and all Plaintiffs were induced to enter into contracts with Defendants WVR, WVO and WYND by fraud.  The misrepresentations, omissions, and concealment of material fact, combined with the high-pressure sales tactics based on fraud and deception, and the nature of the written documents between the parties were all part of a fraudulent scheme devised to induce each Plaintiff to buy timeshare interests from Defendants WVR, WVO and WYND at substantial cost to every and each Plaintiff.

69.     The acts and omissions described herein and included in paragraph 55 above occurred initially in the sales presentation conducted by Defendants WVR, WVO and WYND,

through their agents, on the date and at the location listed in Paragraph 1 above. In each instance, the sales presentation was conducted by a sales representative who was the agent of Defendants WVR, WVO and WYND. The omissions are continuing in nature and continue until current.

70.    The sales contract between the parties should be rescinded, with all sums paid by each Plaintiff returned to each Plaintiff and with the timeshare interests returned to Defendants.  In addition, each and every Plaintiff should recover all damages and other relief to which they are entitled, including punitive damages, which are warranted for the intentional deceptive, unfair, and fraudulent scheme of Defendants WVR, WVO, and WYND.

## COUNT TWO – UNJUST ENRICHMENT
## (WYND, WVO, WVR)

71.    Each and every Plaintiff does hereby incorporate paragraphs 4, 6, 21-23, 28, 35-38 into this count. Should this Court find the contracts between the parties to be invalid, all and each Plaintiff now pleads Count Two, unjust enrichment as an alternative to their count for breach of contract.

72.    All and each Plaintiff conferred benefits upon Defendants, WVR, WVO, and WYND by purchasing VOIs in the form of down payments, monthly mortgage payments, financing charges, financing interest, recurring maintenance fee payments, and additional fee and membership payments in connection with their purchase of VOIs.

73.    Defendants, WVR, WVO, and WYND, did receive the payments from each and all Plaintiffs

74.     Those payments were made with the reasonable expectation that Defendants WVR, WVO, and WYND, through their agents were selling VOIs that could be used by each and any Plaintiffs as represented by Defendants WVR, WVO and WYND, through their agents.

75.     None of the Plaintiffs were able to use the VOI's as represented by Defendants WVR, WVO and WYND, through their agents, as the room reservations were and are unreasonably restricted by the Defendants, WVR, WVO, and WYND, as Defendants, WVR, WVO, and WYND, rent the rooms at issue to the general public or use these rooms for promotional purposes in competition with any and all of the Plaintiffs.

76.     It would be unjust to permit Defendants WVR, WVO and WYND, to keep the payments made by each and any Plaintiff because Defendants WVR, WVO, and WYND, through their agents induced each and all Plaintiffs to make those payments by deceptive acts by Defendants, WVR, WVO and WYND's, sales agents failing to disclose the facts material to the transactions.

77.     Defendants, WVR, WVO, and WYND, are responsible for the acts of their agents, who were trained by and working on behalf WYND, WVO and WVR in the course and scope of their employment, by respondeat superior.

78.     Each and every Plaintiff avers that any and all contracts entered into by the parties are invalid in that each contract was fraudulently induced by material omissions and misrepresentations, and that Defendants, WVR, WVO, and WYND, failed at its duty of good faith and fair dealing at the inception of any alleged contract.

79.     Each and every Plaintiff avers that the Defendants, WVR, WVO, and WYND did appreciate the payments made by each and every Plaintiff in that each Defendant received profit from said payments referenced herein.

18

80.    Each and every Plaintiff avers that the Defendants, WVR, WVO and WYND's acceptance and retention of the benefit in the form of the payments of each and every Plaintiff under the circumstances make it inequitable for Defendants, WVR, WVO, and WYND to retain without paying the value thereof.

81.    Each and every Plaintiff seeks that the contracts among the parties be deemed invalid and awarded restitution.

### COUNT THREE – BREACH OF CONTRACT

### (DUTY OF GOOD FAITH AND FAIR DEALING AND FAILURE TO PROVIDE RESERVATIONS AS REPRESENTED)

### (WYND, WVR, WVO)

82.    Each and every Plaintiff does hereby incorporate paragraphs 4, 6, 21-23, 25-38, 49-55 into this count.

83.    Should this Court find the contract between the parties to be valid, each and every Plaintiff now plead breach of contract as an alternative the Count Two, unjust enrichment.

84.    Each and every Plaintiff contracted with Defendants, WVR, WVO, and WYND to purchase vacation ownership interests in the form of points for use at resorts owned or operated by Defendants, WVR, WVO, and WYND, or Defendants' affiliated or associated resorts.  The contracts at issue are in the possession of WVR, WVO and WYND.

85.    Good faith is an element of every contract pertaining to the purchase of VOIs. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—

not merely the letter—of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

86.    Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are an evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

87.    Defendants, WVR, WVO, and WYND breached their contracts with each and every Plaintiff, including the covenant of good faith and fair dealing, through Defendants, WVR, WVO and WYND's misrepresentations, material omissions and practices as alleged herein.

88.    WVR, WVO, and WYND, through their agents, represented to each and every Plaintiff that the points allocated to Plaintiffs' account could be used to book reservations at Wyndham resorts.

89.    None of the Plaintiffs were able to use the VOI's as represented by Defendants WVR, WVO and WYND, through their agents, as the room reservations were and are unreasonably restricted by the Defendants, WVR, WVO and WYND, as Defendants, WVR, WVO, and WYND, rent the rooms at issue to the general public or use these rooms for promotional purposes in competition with any and all of the Plaintiffs, said unreasonable restrictions  and competition constituting breach of contract among each and every Plaintiff and the Defendants WVR, WVO and WYND.

90.    Each and every Plaintiff has performed all, or substantially all, of the obligations imposed on them under the subject contracts and are legally required to perform.

91.    Each and every Plaintiff has sustained damages as a result of Defendants, WVR, WVO and WYND's conduct.

92.    As a result of these breaches, the contract should be rescinded, and Defendants, WVR, WVO, and WYND should be liable for the damages they have caused each and every Plaintiff.

## COUNT FOUR - VIOLATION OF THE FLORIDA VACATION CLUB AND TIMESHARING ACT
### (WYND, WVO, WVR)

93.    Each and every Plaintiff does herby incorporate paragraphs 4, 6, 21-23, 25-28, 30, 35-38, 45-50, 54-69 into this count.

94.    The Legislature enacted the Florida's Vacation Plan and Timesharing Act ("FVPTA") based, in part, upon its recognition that "the tourism industry in this state is a vital part of the state's economy; that the sale, promotion, and use of timeshare plans is an emerging, dynamic segment of the tourism industry; that this segment of the tourism industry continues to grow, both in volume of sales and complexity and variety of product structure; and that a uniform and consistent method of regulation is necessary in order to safeguard Florida's tourism industry and the state's economic well being." Section 721.02(6), Fla. Stat. (2014). As a result, the FVPTA is to be "interpreted broadly in order to encompass all forms of timeshare plans with a duration of at least 3 years that are created with respect to accommodations and facilities that are located in this state or that are offered for sale in the state…" Id.  The stated purposes of the

95.    FVPTA, include but are not limited to, the following:

   a.   "[e]stablish procedures for the creation, sale, exchange, promotion, and operation of timeshare plans";
   b.   "[p]rovide full and fair disclosure to the purchaser and prospective purchasers of timeshare plans";

c. "[r]equire every timeshare plan offered for sale or created and existing in this state to be subjected to the provisions of" the FVPTA; and

d. protect the consumers who purchase timeshare plans.

96. WVR, WVO, and WYND are and were, at all relevant times, the Developer (as defined by Section 721.05(10), Fla. Stat. (2014)), Seller (as defined by Section 721.05(33), Fla. Stat. (2014)) and/or Managing Entity (as defined by Section 721.05(22), Fla. Stat. (2014)) of a Timeshare Plan (as defined by Section 721.05(39), Fla. Stat. (2014)) Plaintiffs purchased.

97. Plaintiffs specifically allege that they purchased an interest in a "time share plan" (as defined by Section 721.05(39), Fla. Stat. (2014)) from WVR, WVO, and/or WYND and not an interest in an "exchange program" (as defined by Section 721.05(16), Fla. Stat. (2014)).

98. Plaintiffs are and were, at all relevant times, Purchasers (as defined by Section 721.05(30), Fla. Stat. (2014)) of timeshare plans developed, owned, sold, and managed by WVR, WVO, and/or WYND and fall within the class of individuals that the FVPTA is intended to protect.

99. Pursuant to Section 721.21, Fla. Stat. (2014), "[a]n action for damages or for injunctive relief for a violation of this chapter may be brought by any purchaser …against the developer, a seller,  an escrow  agent, or the managing entity."

100. WVR, WVO, and WYND violated numerous provisions of the FVPTA including, but not limited to, Sections 721.075 and 721.11(4)(a) & (h), Fla. Stat. (2014).

101. WVR, WVO, and WYND violated Section 721.075, Fla. Stat. (2014) by unlawfully offering or eliminating incidental benefits purchased by Plaintiffs. The incidental benefits Plaintiffs purchased but were unlawfully eliminated by WVR, WVO, and WYND include, but are not limited to, the following:

102. Eliminating Plaintiffs' right to use their timeshare property by directly competing against them for use of the resorts.

103.    These misrepresentations and restrictions also violate Section 721.11(4)(h), Fla. Stat. (2014) by misrepresenting the nature and extent of any incidental benefit.

104.    WVR, WVO, and WYND violated Section 721.11(4)(a), Fla. Stat. (2014), by misrepresenting to Plaintiffs a fact or creating a false or misleading impression regarding the timeshare plan Plaintiffs purchased from WVR, WVO, and/or WYND. The specific misrepresentations made to Plaintiffs by WVR, WVO, and WYND that violated Section 721.11(4)(a), Fla. Stat. (2014), include, but are not limited to:

a) Failing to reveal that "equity" has no value outside the WVR, WVO, and WYND system.

b) Failing to reveal that WVR, WVO, and WYND will be competing directly with Plaintiffs for reservations and rentals.

c) Failing to reveal that reservations are very difficult to obtain.

d) Failing to reveal that owner update meetings are actually high-pressure sales presentations.

105.    WVR, WVO, and WYND, through their agents, on the date and at the location indicated in Paragraph 1, made a multitude of oral misrepresentations by omission of material facts in violation of FVPTA.

106.    WVR, WVO, and WYND falsely represented to the Plaintiffs that the Wyndham timeshares being purchased by the Plaintiffs have sponsorship, approval, characteristics, uses, benefits or qualities that they did not have.

107.    WVR, WVO, and WYND's statement that prices offered to Plaintiffs for purchase of points were good for one day only constituted a statement concerning future price increases by a seller which was nonspecific or not bona fide.

108.    WVR, WVO, and WYND by omission misrepresented to the Plaintiff the size, nature, extent, qualities, or characteristics of the offered accommodations or facilities.

109.    WVR, WVO, and WYND by omission, misrepresented to the Plaintiff the amount or period of time during which the accommodations or facilities will be available.

110.    WVR, WVO, and WYND used the foregoing misleading and deceptive omissions to induce the Plaintiff into signing the timeshare contract.

111.    WVR, WVO, and WYND created a false or misleading impression regarding the timeshare plans they sold by their omissions.

112.    At the time of the representations and omissions included in the foregoing paragraphs, the representations were false and were being made for WVR, WVO, and WYND's financial gain.

113.    Further, these misrepresentations and omissions were purposefully and willfully disseminated, overseen, or approved from WVR, WVO, and WYND corporate headquarters in Florida to its agents nationwide in order to create a uniform marketing scheme to deceive reasonable consumers like Plaintiffs, the corporate executives at WVR, WVO, and WYND had full knowledge of these sales tactics and encouraged and trained agents to do so.

114.    Moreover, Plaintiffs relied on the foregoing false impressions and subsequent reassurances by WVR, WVO, and WYND in agreeing to make various purchases and these false impressions induced Plaintiffs into purchasing Timeshares from WVR, WVO, and WYND.

115.    All of WVR, WVO, and WYND's forgoing violations of the FVPTA have been ongoing and continuous in nature.

116.    As a direct result of WVR, WVO, and WYND's forgoing violations of the FVPTA, Plaintiffs have sustained damages they are entitled to recover from Defendants pursuant to Section 721.21, Fla. Stat. (2014).

117.     WHEREFORE, the Plaintiffs seek compensatory and punitive damages, plus interest and costs, reasonable attorneys' fees and demands trial by jury on all issues so triable. The Plaintiff prays for such other and further relief this Court deems appropriate.

## PRAYER FOR RELIEF

In light of the foregoing, each and every Plaintiff respectfully requests:

118.     That an injunction be issued declaring that Plaintiffs have a right to rescind their contracts, that said contracts be determined to be invalid and that Defendants WVR, WVO, and WYND must disgorge profits received from any and all Plaintiffs.

119.     Judgment to be entered in favor of each and every Plaintiff against all Defendants WVR, WVO and WYND on all causes of action and damages suffered;

120.     Each and every Plaintiff be awarded the full, fair, and complete recovery for all causes of action and damages suffered in the collective amount of $680,000.00.

121.     Each and every Plaintiff be awarded rescission, damages, punitive damages, restitution, reasonable attorney's fees, and costs.

122.     Each and every Plaintiff be awarded all appropriate costs, fees, expenses, and prejudgment and post-judgment interest, as authorized by law; and

123.     Such other relief that the Court deems just and proper.

### JURY TRIAL DEMAND

Each and every Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted,


**/s/Donald S. Hackett III**
Donald S. Hackett III (No. #0127352)
25 Dr. M L King Ave #307
Memphis, TN 38103
don@donhackettlaw.com
(901)-501-6992